IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-CR-20242-UNGARO

UNITED STATES OF AMERICA,

    Plaintiff,
vs.

MEGHANA RAJADHYAKSHA,

    Defendant.
_____/

**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A VARIANCE**

    **COMES NOW**, Defendant, MEGHANA RAJADHYAKSHA ("Ms. Rajadhyaksha"), by and through her undersigned counsel and hereby files Defendant's Sentencing Memorandum and Request for a Variance in order to assist the Court in fashioning a fair and reasonable sentence in this matter, and as grounds therefore would state the following:

**I.**    **INTRODUCTION**

    On May 31, 2019, Ms. Rajadhyaksha pled guilty to Counts One (1) through Four (4) of a four-count Information. Counts One (1) through Three (3) charged her with Mail Fraud in violation of 18 U.S.C. § 1341 and Count Four (4) which charged her with Sale of Stolen Goods in violation of 18 U.S.C. § 2315.

    Sentencing is this matter is scheduled for July 25, 2019 at 1:30 p.m.

    Ms. Rajadhyaksha is an extremely remorseful, shamed, and scared 39 year-old woman now before the Court for sentencing. She is a kind and loving woman who is deeply devoted to her husband and two young children; who has spent much of her life helping others in need with her generosity and doing charitable work in the community; whose entire family is suffering and

has been subjected to ridicule and cruel comments due in part to the social media reports regarding the instant offense; who suffers from major depression and social anxiety disorder and whose prognosis for recovery with mental health treatment is excellent; who candidly acknowledges her mistakes in this offense, and has accepted full responsibility for her actions at the earliest stage; and who is making full restitution to the victim; and who with humility, asks the Court, as a first-time, non-violent offender, to fashion a sentence that allows her the opportunity to redeem herself.

No one downplays Ms. Rajadhyaksha's conduct in this matter, but after assessing the following mitigating factors, taken individually and collectively, a non-custodial sentence is fair and just.

## II.   PRE-SENTENCE INVESTIGATION REPORT AND ADVISORY GUIDELINES

Ms. Rajadhyaksha has filed no legal objection to the Pre-sentence Investigation Report ("PSIR") regarding her applicable sentencing guideline range. Based upon the calculations determined by the probation officer, the total offense level is 13. PSIR at ¶ 41. With a criminal history category I, Ms. Rajadhyaksha's advisory guideline imprisonment range is 12 to 18 months (Zone C). PSIR at ¶ 84.

## III.   18 U.S.C. § 3553(a) FACTORS

Ms. Rajadhyaksha's request for a variance comports with the sentencing procedures that have evolved since the Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005) and *Gall v. United States*, 552 U.S. 38 (2007). *See also United States v. Livesay*, 525 F.3d 1081, 1089-90 (11th Cir. 2008) (summarizing current sentencing procedures in the Eleventh Circuit); *United States v. Pugh*, 513 F.3d 1179, 1188-91 (11th Cir. 2008).

The message of *Gall* and its companion case, *Kimbrough v. United States*, 552 U.S. 85 (2007), is that where circumstances warrant, the district courts can impose sentences that vary downward significantly from the advisory guidelines range, and the appellate courts will affirm such sentences as reasonable.[1]

In particular, the Eleventh Circuit has repeatedly affirmed below-guideline sentences after *Booker*. *See United States v. Clay*, 483 F.3d 739 (11th Cir. 2007) (affirming 60-month sentence even though guidelines were 188-235 months); *United States v. Mathis*, 186 Fed. Appx. 971 (11th Cir. 2006) (50% variance from top end of guidelines affirmed in Hobbs Act extortion and obstruction of justice case); *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006) (affirming 72-month sentence even though low end of guidelines were 151 months, more than double sentence imposed); *United States v. Halsema*, 180 Fed. Appx. 103 (11th Cir. 2006) (affirming 24-month sentence even though guidelines were 57-71 months); *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006) (90 months imprisonment was sufficient, but not greater than necessary to punish, deter, and rehabilitate defendant even though low end of guidelines was 188 months). And, of course, the Court must also consider all of the factors set forth in 18 U.S.C. § 3553(a).

The sentencing court first evaluates the appropriate guidelines, resolves any guidelines objections, and determines the applicable advisory guidelines range. *Gall,* 552 U.S. at 49-50; *Livesay*, 525 F.3d at 1089-90. Then, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should . . . consider all

---

[1] In *Gall*, the district court imposed a non-custodial sentence despite an advisory range of 30-37 months; the Supreme Court deemed the sentence reasonable. 552 U.S. at 43-44. Although *Kimbrough* dealt more specifically with the crack/powder ratio in the guidelines, its broad message is the same as *Gall*: where an advisory range is severe, and the § 3553(a) factors warrant it, substantial downward variances may be reasonable.

of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party." *Livesay*, 525 F.3d at 1089-90 (quoting *Gall* and *Pugh*). The factors which the sentencing court "shall consider" are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) kinds of sentences available; (4) the applicable category of offense committed by the applicable category of defendant as set forth in the Federal Sentencing Guidelines; (5) pertinent policy statements issued by the Federal Sentencing Commission; (6) the need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

The sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2)(A)-(D). *United States v. McBride*, 511 F.3d 1293, 1296-97 (11th Cir. 2007) (addressing sentencing standards and holding in child pornography case that substantial downward variance of almost 50% from low-end of advisory range comported with (a)(2) and was reasonable). The court "may not presume that the [advisory] Guidelines range is reasonable." *Gall*, 552 U.S. at 50. Thus, after making an "individualized assessment" of the § 3553(a) factors based on the facts presented, *Id.*, the sentencing court is empowered to grant a variance (above or below) the advisory guidelines range, to whatever extent the court deems warranted by those facts. *Gall*, 552 U.S. at 50-51;

4

*Livesay*, 525 F.3d at 1090; *McBride*, 511 F.3d at 1297-98. If the sentencing court decides that the facts and the § 3553(a) factors warrant a downward variance, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.[2]

### A.   Nature and Circumstances of Offense

From around November 2017 through March 2018, Ms. Rajadhyaksha ordered 69 designer handbags ("Luxury Items") from T.J. Maxx's e-commerce website.[3] The total retail value of these Luxury Items was $133,719.23.

Ms. Rajadhyaksha then removed the T.J. Maxx tags from the Luxury Items and placed them on handbags ("Non-Luxury Items") that she had purchased on Amazon. Thereafter, Ms. Rajadhyaksha would ship the Non-luxury Items back to T.J. Maxx requesting a refund. Subsequently, Ms. Rajadhyaksha received a full credit on her various accounts from T.J. Maxx for all of the returned items.

At the time of Ms. Rajadhyaksha's arrest at her residence, law enforcement seized 59 Luxury Items from Ms. Rajadhyaksha's bedroom closet. The Luxury Items were unused and in pristine condition. Ms. Rajadhyaksha placed 10 of the Luxury Items for sale with an online consignment company called The RealReal. All 10 Luxury Items sold and Ms. Rajadhyaksha received $10,806.25 in commissions.

### B.   Personal History and Characteristics

Ms. Rajadhyaksha is a 39 year-old woman who has been married to her husband, Dr.

---

[2] The controlling principle is that the district court's sentence be reasonable; the sentence, if challenged by a party claiming it is unreasonable, is reviewed by the Eleventh Circuit under a deferential abuse of discretion standard. For a full discussion of the standards of appellate review, see *Gall* 552 U.S. at 51, *Livesay*, 525 F.3d at 1090.
[3] See PSIR at ¶¶ 17-29 (Offense Conduct) and Factual Proffer (D.E. 20).

Amar Rajadhyaksha for almost 13 years.[4] Dr. Rajadhyaksha is an orthopedic surgeon who specializes in spine surgery and is the manager of Miami Spine Institute LLC located in Coral Gables, Florida. They have two children together: a son, Vinay (8), and a daughter Saya (5); both who attend Saint Stephen's Episcopal Day School in Coconut Grove, Florida. Ms. Rajadhyaksha maintains a close and loving relationship with her two children and, husband. Dr. Rajadhyaksha is fully supportive of his wife notwithstanding the impact of the instant offense on his family.

Ms. Rajadhyaksha was born in Michigan and raised by her parents in the Midwest. Her father, Chandrakant Patel, was a chemical engineer who died from complications of colon cancer in 2015 at 69 years-old. Her mother, Panna Patel, is a retired small business manager and resides in Melbourne, Florida. Ms. Rajadhyaksha has one (1) brother, Manan Patel (42), who is a pathologist. He is married with three (3) children and lives in Indiana. Both her mother and brother are aware of the instant offense and remain supportive.

Ms. Rajadhyaksha graduated from Troy High School in Troy, Michigan in 1998. In 1992, she received a Bachelor of Arts degree in Business with a minor in Political Science from the University of Michigan. Following graduation, Ms. Rajadhyaksha moved to New York City and was employed for approximately eight (8) years as a medical sales representative for Zimmer Holdings. During this time in New York City, she met her future husband, Dr. Rajadhyaksha, and they eventually got married in 2006.

In 2009, due to career opportunities for her husband, Ms. Rajadhyaksha re-located to Miami, Florida. Until 2013, Ms. Rajadhyaksha concentrated on having children and starting a

---

[4] See PSR at ¶¶ 48-67 (Offender Characteristics).

family. For the past 6 years, Ms. Rajadhyaksha has worked part-time from home marketing the Miami Spine Institute LLC. In addition to marketing, she acts as a liaison between physicians, attorneys and patients.

In 2015, tragedy struck the Ms. Rajadhyaksha's family. As stated *supra*, Ms. Rajadhyaksha's father suddenly and tragically died from complications with colon cancer. Suring this time, she frequently drove to Melbourne, Florida each weekend to be by her father's side and be supportive of her mother. Additionally, her father medical condition was initially misdiagnosed by his physicians which led to his "untimely" death. This significantly impacted Ms. Rajadhyaksha's mental state.

Ms. Rajadhyaksha has endured several serious medical issues of her own throughout her time in Miami. She has had three (3) difficult pregnancies; one resulting in a miscarriage. During the pregnancy of her first child, Vinay, she suffered from severe hyperemesis of pregnancy; with nausea and vomiting so severe, she needed to sleep on the bathroom floor. When Ms. Rajadhyaksha became pregnant with her daughter, Saya, the hyperemesis was even more profound while at the same time managing another toddler.

During the time frame of the conduct in the instant offense, Ms. Rajadhyaksha was suffering from Major Depression and Social Anxiety Disorder. Dr. Singer, a board-certified psychiatrist, has been treating Ms. Rajadhyaksha weekly since April 2019. Dr. Singer opines[5] that Ms. Rajadhyaksha's has been suffering from depression for the past seven (7) years; likely beginning with the difficulties associated with the birth of her first child. Additionally, Dr. Singers believes that the relocation from New York to Miami where she was cut-off from her

---

[5] Dr. Singer's Psychological Evaluation and Report was submitted to the Court as an attachment to the Pre-sentence Investigation Report.

professional and social support groups, led her to feel "isolated" and deepened her depression. Moreover, the circumstances surrounding the unexpected and unnecessary death of her father only exacerbated her clinical depression.

According to Dr. Singer, Ms. Rajadhyaksha's conduct in this matter (buying and substituting handbags) became an obsession and a way to break the routine of her depression. With continued mental health treatment and medication, Dr. Singer's opines that Ms. Rajadhyaksha's prognosis is excellent. Moreover, her risk of recidivism is virtually zero. Ms. Rajadhyaksha is amenable to any mental health treatment that the Court deems appropriate.

The negative impact of this offense on Ms. Rajadhyaksha's husband and children cannot be understated. She readily acknowledges that it was her conduct that caused this harm; she is guilt-ridden over this. One example of this impact, Ms. Rajadhyaksha's daughter was told by another student in her school that "I heard your mommy is a thief." Additionally, shortly after her arrest, Ms. Rajadhyaksha received an anonymous letter from someone at her children's school stating "You are a low life idiot. Get the hell out of our school." *See Exhibit "A"*. Ms. Rajadhyaksha asks the Court to consider the foregoing in determining an appropriate sentence for her in this matter.

Shortly after Ms. Rajadhyaksha's change of plea, people who truly know and love her wrote letters to the Court to help give the Court some insight into the type of person she is before the Court for sentencing. These letters,[6] present the best and most reliable portrait of Ms. Rajadhyaksha's true character. The authors of these letters represent a broad spectrum of people including teachers, friends, colleagues and most importantly, her family.

What is clear in these letters is Ms. Rajadhyaksha's dedication to her family and helping

---

[6] These letters are selected excerpts from Composite Exhibit "A" previously filed with the Court (D.E. 27).

others in the community through charitable work. Dr. Christine Winter, who recently moved to Miami and experienced first-hand Ms. Rajadhyaksha's welcoming way and friendship:

> I met Meghana Rajadhyaksha in August 2017 after we moved to Miami from Switzerland and our children started going to school in St. Stephen's Episcopal Day School. Meghana was the room parent in my daughter's class and helped us a lot with the transition to the new school and did everything to make us feel welcome. She organized a family picnic to help our children to make new friends in their school. I was impressed by her warm and friendly personality and her desire to connect and support others. As a room mum in our class she spent too much time and energy to organize field trips, parties special events for the children etc. She supported the students, teachers, and families in every way she could and I respect her for all the work she did for our class. She organized a heartwarming "Kindness-Dance" for the children that was one of my highlights of the school year. I admire her for the love and passion that she puts in everything she does. Meghana and I became close friends in the last year. We had countless conversations about parenthood, families, relationships, education, beliefs, our hopes for the future and so much more. I trust her 100% and she never disappointed me as a friend. I truly value her opinion when I face a difficult situation and I can always count on her when I need support. Meghana is a wonderful mother to her children and sets an example for all parents to bring out the best in our children. Her children shine bright academically and socially in the school community. In my career as a pediatrician I have met a lot of families, but rarely a family that impressed me more than the Rajadhyakshas.

Suzy Buckley Woodard, who knows Ms. Rajadhyaksha through doing charity work in the community, writes about her acts of kindness to others, to her , and taking a terrible mistake and turning it into a positive learning lesson:

> I have known Meghana for four years, and we've not only traveled together as friends socially, but have served on various committees together in the Miami charity world, including the women of Tomorrow Rosé Day Fundraiser, and Nicklaus Children's Hospital's Wine, Women & Shoes fundraiser. She's a very caring, thoughtful, devoted wife to her husband. The first thing she asked me when her alleged crime came to light was, "How can I turn this into something positive, what can I do to move forward and move past this?" She was immediately interested in righting any wrongs and getting back on the right track. I understand that she has been through some emotional and physical challenges the past several years, including the death of her father, two difficult pregnancies and a miscarriage. I think that she was probably not in the best frame of mind and perhaps even dealing with a chemical imbalance when the alleged misguided schemes were allegedly concocted. I'll never forget a few years ago, when I was

having horrible stomach pains during my own birthday party. She left the party immediately and walked to Walgreens to get me medicine! I told her over and over how nice that was, as it was super inconvenient for her to have to leave the dinner, and she really went out of her way to make me comfortable. On another occasion, she and her husband kindly wrote me a letter of recommendation to try to help my daughter be admitted to a private school I was hoping she would attend. They are both great people who are willing to help and make the world a better place. I think people deserve second chances, and hope you will consider giving her a little room to grow in this situation.

Dr. Rajadhyaksha, who truly knows his wife best, writes about her struggles with her pregnancies, her father's death, and the stigma of mental health issues in their cultural background and the remarkable progress he has observed up close in his wife since receiving mental health therapy:

> She has always been an independent woman. When I met her, she had loving and supportive friends and family. She had a successful career and she was a strong woman. We left New York City in 2009 and came to Miami. Soon after our move to Miami, she became pregnant. She had a very difficult pregnancy, filled with nausea and vomiting. Being new to Miami, we did not have a support system. Unfortunately, I was building my practice at that time, and I was not there as much as I should have been. After the birth of our first child, we soon became pregnant again. Meghana carried that baby for three months (accompanied by severe nausea and vomiting again) and then had a miscarriage. This was devastating for her. At the time, the only thing that would make her feel somewhat better was to get pregnant again. We started trying right away. When she became pregnant again, she started to cry, as she was so afraid of going through another pregnancy. The third pregnancy was worse than the prior two. She was so sick that she was not able to eat or drink. I used to give her IV fluids at home. During this time, her father was misdiagnosed and then diagnosed with colon cancer. With a two-year-old and a newborn, she drove every weekend to northern Florida to watch her father suffer until his death. She felt cheated. In the ensuing months and years, she became more and more withdrawn. As her husband, I didn't analyze her. I didn't notice how she was changing. Coming from a conservative Indian background, there was a significant stigma associated with mental health issues, so she never brought up her feelings or asked for help. As a doctor, I am embarrassed that I didn't see the signs of her depression. She was withdrawn. She had insomnia. She didn't eat. She became anti-social. These are all signs of depression that I missed. As her husband, I am ashamed, as I just thought she was moody. I thought that we all have good days and bad days. I wish I could go back in time and give her the support that she deserved and got her the

help that she so desperately needed. Over the past few months, she has received professional help from Dr. Singer. She is on medication and is motivated to heal. I have seen such a remarkable difference in her with just a few months of therapy and the appropriate medications. She has acknowledged her mistakes and I assure you that she will never make them again.

Notwithstanding the foregoing, Ms. Rajadhyaksha throughout her time in Miami has still been committed and devoted her time to doing charitable work. Since 2009, she has donated money, supporting through hands-on work and through organizing fundraising events for the following organizations:

1) Women of Tomorrow;
2) Nicklaus Children's Hospital Foundation;
3) Jackson Health Foundation/Holtz children's Hospital;
4) Big Bother's Big Sisters of Miami;
5) Habitat for Humanity;
6) American Cancer Society;
7) Kristi House;
8) Diabetes Research Institute Foundation;
9) Children's Home Society;
10) Miami Children's Museum;
11) Baptist Health System/Doctor's Hospital;
12) Buoniconti Fund to Cure Paralysis;
13) Miami Rescue Mission for the Homeless;
14) Bass Museum of Art;
15) Vizcaya Preservation Society; and,
16) Fairchild Tropical Foundation.

*See* PSIR at ¶ 63.

Courts have repeatedly held that a defendant's otherwise good character and deeds, and charitable work should be considered as a factor in sentencing. *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) (downward variance not unreasonable in part because of defendant's positive characteristics including no history of substance abuse, no interpersonal instability, his motivation and intelligence, and his support of his wife and child); *United States v. Santoya*, 493 F. Supp. 2d 1075 (E.D. Wisc. 2007) (downward departure justified in part because of significant

positives in defendant's character as evidenced by letters from family and fiancé); *United States v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007) (downward departure from 121-151 months to 70 months due, in part, to the guidelines failing to consider defendant's otherwise outstanding character, as depicted in the many supportive letters provided); United States *v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (downward variance not unreasonable in part because of defendant's charitable activities and good deeds); *United States v. Rouhani*, 598 Fed.Appx. 626 (11th Cir. 2015) (downward variance granted where district court found many people depend on defendant both in his business and personal life, and defendant had a history of trying to be a good citizen and doing good deeds).

Ms. Rajadhyaksha asks the Court to consider her life-long commitment to others and her community when imposing her sentence.

### C. Restitution

One of the factors the Court shall consider in determining an appropriate sentence is "the need to provide restitution to any victims of the offense." *See* 18 U.S.C. § 3553(a)(7). At a very early stage in this matter, undersigned counsel informed the United States and subsequently the United States Probation Office that Ms. Rajadhyaksha would be paying restitution at the time of sentencing to the victim, T.J. Maxx.

### IV. CONCLUSION

After making an individualized assessment of Ms. Rajadhyaksha and weighing the § 3533(a) factors, a non-custodial sentence would lead to a reasonable and just sentence in this matter.

Respectfully submitted,

**MASE MEBANE & BRIGGS, P.A.**
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile:  (305) 377-0080

By:    */s/ Christopher G. Lyons*
      CHRISTOPHER G. LYONS
      Florida Bar No.: 985457
      clyons@maselaw.com
      carbelaez@maselaw.com
      filing@maselaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 22, 2019, the foregoing has been electronically filed with the Clerk of Court and served on all parties of record through CM/ECF.

By: */s/Christopher G. Lyons*
    CHRISTOPHER G. LYONS, ESQ.